

Christopher Fontenelli
Brookfield Place, 200 Vesey Street, 20th Floor
New York, NY 10281
Telephone:  212-415-8600
Fax:  212-303-2754
www.lockelord.com

Direct Telephone (212) 912-2730
Direct Fax (212) 303-2754
christopher.fontenelli@lockelord.com

June 25, 2019

**VIA ECF**

Hon. Claire C. Cecchi, U.S.D.J
United States District Court for the District of New Jersey
Martin Luther King Building
50 Walnut Street
Newark, NJ  07101

Re: **Educational Financial Services, a Division of Wells Fargo Bank, N.A. (Appellant) v. Veronica Knepp (Appellee), No. 2:19-cv-05096-SDW**

Judge Cecchi:

Locke Lord LLP represents Appellant Education Financial Services, A Division of Wells Fargo Bank, N.A. (incorrectly named as "Educational Financial Services") ("Wells Fargo") in the above-captioned appeal. We write to inform the Court of the U.S. Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) (attached), which confirms that bankruptcy courts do not have exclusive jurisdiction over the question of whether a debt was discharged in bankruptcy. 139 S. Ct. at 1803. *Taggart* rejected an interpretation of Section 524 that "would alter who decides whether a debt was discharged." *Id.*  State courts have concurrent jurisdiction over most dischargeability determinations. *Id.* (citing 28 U.S.C. §1334(b); Advisory Committee's 2010 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 8, 28 U.S.C. App., p. 776 (noting that "whether a claim was excepted from discharge" is "in most instances" not determined in bankruptcy court)). And if state courts have jurisdiction to resolve dischargeability questions, there is no reason why arbitrators should be prevented from making that determination. *See* Appellant's Br. at 21-24; Reply at 11.

*Taggart* also shows that a determination must be made regarding whether a debt was discharged in bankruptcy before the court may proceed to the question whether a creditor violated the bankruptcy court's discharge injunction. 139 S. Ct. at 1803. *Taggart* rejected the argument that creditors must seek an "advance determination" during a bankruptcy proceeding of whether a debt has been discharged as a condition for seeking to collect on that debt post-petition. *Id.* Because Congress has already determined when such advanced determinations are warranted, *see* 11 U.S.C. §523(c)(1), the Court did not require such advance determinations for other types of debts, such as for student loans. *Id.* By recognizing the need for litigation of the predicate

June 25, 2019
Page 2

question of whether a debt was discharged, *Taggart* highlights the error made by the bankruptcy court by presuming that Knepp's debt was discharged when determining whether arbitration was required. *See* Reply at 2-3. Thus, the bankruptcy court skipped the key question of the nature and continued validity of Knepp's debt, which are issues squarely encompassed within the arbitration agreement.

                                                Respectfully submitted,

                                                /s/ Christopher B. Fontenelli
                                                   Christopher B. Fontenelli

cc: Counsel for Appellee (via ECF)

139 S.Ct. 1795
Supreme Court of the United States.

Bradley Weston TAGGART, Petitioner

v.

Shelley A. LORENZEN, Executor
of the Estate of Stuart Brown, et al.

No. 18-489
|
Argued April 24, 2019
|
Decided June 3, 2019

**Synopsis**
**Background:** Former Chapter 7 debtor filed motion to hold attorney and his clients in contempt for willfully violating discharge injunction. The United States Bankruptcy Court for the District of Oregon, Randall L. Dunn, J., 2011 WL 6140521, denied motion, and also denied subsequent motion for reconsideration, 2012 WL 280726. Debtor appealed. The District Court, Mosman, J., 2012 WL 3241758, reversed. On remand, the Bankruptcy Court, Dunn, J., 522 B.R. 627, entered order awarding contempt sanctions. Appeal was taken. The Bankruptcy Appellate Panel (BAP), Jury, J., 548 B.R. 275, reversed and vacated. Both sides appealed. The Court of Appeals for the Ninth Circuit, Bea, Circuit Judge, 888 F.3d 438, affirmed. Certiorari was granted.

**[Holding:]** The Supreme Court, Justice Breyer, held that a bankruptcy court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct, that is, if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

Vacated and remanded.

**Procedural Posture(s):** Petition for Writ of Certiorari; On Appeal; Motion for Contempt Sanctions.

West Headnotes (20)

[1]  **Bankruptcy**
     **Discharge as injunction**
     "Discharge order," an order that is typically entered by bankruptcy court at conclusion of bankruptcy proceeding and releases the debtor from liability for most pre-bankruptcy debts, bars creditors from attempting to collect any debt covered by the order. 11 U.S.C.A. § 524(a)(2).

     Cases that cite this headnote

[2]  **Bankruptcy**
     **Liquidation, Distribution, and Closing**
     Chapter 7 of the Bankruptcy Code permits insolvent debtors to discharge their debts by liquidating assets to pay creditors. 11 U.S.C.A. §§ 704(a)(1), 726.

     Cases that cite this headnote

[3]  **Bankruptcy**
     **Discharge as injunction**
     Bankruptcy court's discharge order operates as an injunction that bars creditors from collecting any debt that has been discharged. 11 U.S.C.A. § 524(a)(2).

     1 Cases that cite this headnote

[4]  **Bankruptcy**
     **Violation of discharge order**
     Bankruptcy court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct, that is, if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order; based on the traditional principles that govern civil contempt, the proper standard is an objective one, not a standard akin to strict liability or a

purely subjective standard, and such objective standard strikes the careful balance between interests of creditors and debtors that the Bankruptcy Code often seeks to achieve. 11 U.S.C.A. §§ 105(a), 524(a)(2).

1 Cases that cite this headnote

[5] **Statutes**
 Other Law, Construction with Reference to

When a statutory term is obviously "transplanted" from another legal source, it "brings the old soil" with it.

Cases that cite this headnote

[6] **Injunction**
 Contempt

Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to coerce the defendant into compliance with an injunction or compensate the complainant for losses stemming from the defendant's noncompliance with an injunction.

Cases that cite this headnote

[7] **Bankruptcy**
 Violation of discharge order

Bankruptcy statutes do not grant courts unlimited authority to hold creditors in civil contempt for violating the discharge injunction; instead, the statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction. 11 U.S.C.A. § 524(a)(2).

Cases that cite this headnote

[8] **Bankruptcy**
 Contempt
**Contempt**
 Weight and sufficiency

In cases outside the bankruptcy context, civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.

1 Cases that cite this headnote

[9] **Contempt**
 Civil contempt
**Injunction**
 Contempt

Civil contempt is a severe remedy, and so principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt.

1 Cases that cite this headnote

[10] **Contempt**
 Civil contempt

Standard for civil contempt is generally an objective one.

Cases that cite this headnote

[11] **Contempt**
 Disobedience to Mandate, Order, or Judgment

Party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable.

Cases that cite this headnote

[12] **Contempt**
 Disobedience to Mandate, Order, or Judgment

Absence of wilfulness does not relieve one from civil contempt.

1 Cases that cite this headnote

[13] **Contempt**
 Disobedience to Mandate, Order, or Judgment

Subjective intent is not always irrelevant to a determination of civil contempt; civil contempt sanctions may be warranted, for example, when a party acts in bad faith.

Cases that cite this headnote

[14]  **Contempt**
 Disobedience to Mandate, Order, or Judgment

Party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction.

Cases that cite this headnote

[15]  **Bankruptcy**
 Violation of discharge order

Under the fair ground of doubt standard, civil contempt may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope. 11 U.S.C.A. § 524(a)(2).

1 Cases that cite this headnote

[16]  **Contempt**
 Disobedience to Mandate, Order, or Judgment

Under traditional civil contempt principles, parties cannot be insulated from a finding of civil contempt based on their subjective good faith.

Cases that cite this headnote

[17]  **Bankruptcy**
 Purpose

A chief purpose of the bankruptcy laws is to secure a prompt and effectual resolution of bankruptcy cases within a limited period.

Cases that cite this headnote

[18]  **Bankruptcy**
 Automatic Stay

Automatic stay, which is entered at the outset of a bankruptcy proceeding, aims to prevent damaging disruptions to administration of the bankruptcy case in the short run. 11 U.S.C.A. § 362.

Cases that cite this headnote

[19]  **Bankruptcy**
 Discharge as injunction

Discharge, which is entered at the end of the bankruptcy case, seeks to bind creditors over a much longer period than the automatic stay. 11 U.S.C.A. §§ 362, 524(a)(2).

Cases that cite this headnote

[20]  **Bankruptcy**
 Enforcement of Injunction or Stay

Word "willful," as used in the Bankruptcy Code's automatic stay provision, is one that the law typically does not associate with strict liability, but whose construction is often dependent on the context in which it appears. 11 U.S.C.A. § 362.

Cases that cite this headnote

*Syllabus*[*]

Petitioner Bradley Taggart formerly owned an interest in an Oregon company. That company and two of its other owners, who are among the respondents here, filed suit in Oregon state court, claiming that Taggart had breached the company's operating agreement. Before trial, Taggart filed for bankruptcy under Chapter 7 of the Bankruptcy Code. At the conclusion of that proceeding, the Federal Bankruptcy Court issued a discharge order that released Taggart from liability for most prebankruptcy debts. After the discharge order issued, the Oregon state court entered judgment against Taggart in the prebankruptcy suit and awarded attorney's fees to respondents. Taggart returned to the Federal Bankruptcy Court, seeking civil contempt sanctions against respondents for collecting attorney's fees in violation of the discharge order. The

Bankruptcy Court ultimately held respondents in civil contempt. The Bankruptcy Appellate Panel vacated the sanctions, and the Ninth Circuit affirmed the panel's decision. Applying a subjective standard, the Ninth Circuit concluded that a "creditor's good faith belief" that the discharge order "does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief if unreasonable." 888 F. 3d 438, 444.

*Held*: A court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. Pp. 1800 – 1804——.

(a) This conclusion rests on a longstanding interpretive principle: When a statutory term is " 'obviously transplanted from another legal source,' " it " 'brings the old soil with it.' " *Hall* v. *Hall*, 584 U.S. ——, ——, 138 S.Ct. 1118, 1128, 200 L.Ed.2d 399. Here, the bankruptcy statutes specifying that a discharge order "operates as an injunction," 11 U.S.C. § 524(a)(2), and that a court may issue any "order" or "judgment" that is "necessary or appropriate" to "carry out" other bankruptcy provisions, § 105(a), bring with them the "old soil" that has long governed how courts enforce injunctions. In cases outside the bankruptcy context, this Court has said that civil contempt "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *California Artificial Stone Paving Co.* v. *Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106. This standard is generally an objective one. A party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable. Subjective intent, however, is not always irrelevant. Civil contempt sanctions may be warranted when a party acts in bad faith, and a party's good faith may help to determine an appropriate sanction. These traditional civil contempt principles apply straightforwardly to the bankruptcy discharge context. Under the fair ground of doubt standard, civil contempt may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope. Pp. 1801 – 1802.

(b) The standard applied by the Ninth Circuit is inconsistent with traditional civil contempt principles, under which parties cannot be insulated from a finding of civil contempt based on their subjective good faith. Taggart, meanwhile, argues for a standard that would operate much like a strict-liability standard. But his proposal often may lead creditors to seek advance determinations as to whether debts have been discharged, creating the risk of additional federal litigation, additional costs, and additional delays. His proposal, which follows the standard some courts have used to remedy violations of automatic stays, also ignores key differences in text and purpose between the statutes governing automatic stays and discharge orders. Pp. 1802 – 1804.

888 F. 3d 438, vacated and remanded.

BREYER, J., delivered the opinion for a unanimous Court.

**Attorneys and Law Firms**

**\*1797** Janet M. Schroer, Hart Wagner, LLP, James Ray Streinz, Streinz Law Office LLC, Hollis K. McMilan, Hollis K. McMilan, PC, Portland, OR, Nicole A. Saharsky, Andrew E. Tauber, Michael B. Kimberly, Matthew A. Waring, Minh Nguyen-Dang, Mayer Brown LLP, Washington, DC, Aaron Gavant, Mayer Brown LLP, Chicago, IL, for Respondents.

John M. Berman, Tigard, OR, Daniel L. Geyser, Geyser P.C., Dallas, TX, for Petitioner.

Daniel L. Geyser, Dallas, TX, for Petitioner.

Nicole A. Saharsky, Washington, DC, for Respondents.

Sopan Joshi for the United States as amicus curiae, by special leave of the Court, in support of neither party.

**Opinion**

Justice BREYER delivered the opinion of the Court.

**\*1799** **[1]** At the conclusion of a bankruptcy proceeding, a bankruptcy court typically enters an order releasing the debtor from liability for most prebankruptcy debts. This order, known as a discharge order, bars creditors from attempting to collect any debt covered by the order. See 11 U.S.C. § 524(a)(2). The question presented here concerns the criteria for determining when a court may hold a creditor in civil contempt for attempting to

collect a debt that a discharge order has immunized from collection.

The Bankruptcy Court, in holding the creditors here in civil contempt, applied a standard that it described as akin to "strict liability" based on the standard's expansive scope. *In re Taggart*, 522 B. R. 627, 632 (Bkrtcy. D.Ct. Ore. 2014). It held that civil contempt sanctions are permissible, irrespective of the creditor's beliefs, so long as the creditor was " 'aware of the discharge' " order and " 'intended the actions which violate[d]' " it. *Ibid.* (quoting *In re Hardy*, 97 F. 3d 1384, 1390 (CA11 1996)). The Court of Appeals for the Ninth Circuit, however, disagreed with that standard. Applying a subjective standard instead, it concluded that a court cannot hold a creditor in civil contempt if the creditor has a "good faith belief" that the discharge order "does not apply to the creditor's claim." *In re Taggart*, 888 F. 3d 438, 444 (2018). That is so, the Court of Appeals held, "even if the creditor's belief is unreasonable." *Ibid.*

We conclude that neither a standard akin to strict liability nor a purely subjective standard is appropriate. Rather, in our view, a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

I

Bradley Taggart, the petitioner, formerly owned an interest in an Oregon company, Sherwood Park Business Center. That company, along with two of its other owners, brought a lawsuit in Oregon state court, claiming that Taggart had breached the Business Center's operating agreement. (We use the name "Sherwood" to refer to the company, its two owners, and—in some instances—their former attorney, who is now represented by the executor of his estate. The company, the two owners, and the executor are the respondents in this case.)

[2] [3] Before trial, Taggart filed for bankruptcy under Chapter 7 of the Bankruptcy Code, which permits insolvent debtors to discharge their debts by liquidating

*1800 assets to pay creditors. See 11 U.S.C. §§ 704(a)(1), 726. Ultimately, the Federal Bankruptcy Court wound up the proceeding and issued an order granting him a discharge. Taggart's discharge order, like many such orders, goes no further than the statute: It simply says that the debtor "shall be granted a discharge under § 727." App. 60; see United States Courts, Order of Discharge: Official Form 318 (Dec. 2015), http://www.uscourts.gov/sites/default/files/form_b318_0.pdf (as last visited May 31, 2019). Section 727, the statute cited in the discharge order, states that a discharge relieves the debtor "from all debts that arose before the date of the order for relief," "[e]xcept as provided in section 523." § 727(b). Section 523 then lists in detail the debts that are exempt from discharge. §§ 523(a)(1)–(19). The words of the discharge order, though simple, have an important effect: A discharge order "operates as an injunction" that bars creditors from collecting any debt that has been discharged. § 524(a)(2).

After the issuance of Taggart's federal bankruptcy discharge order, the Oregon state court proceeded to enter judgment against Taggart in the prebankruptcy suit involving Sherwood. Sherwood then filed a petition in state court seeking attorney's fees that were incurred *after* Taggart filed his bankruptcy petition. All parties agreed that, under the Ninth Circuit's decision in *In re Ybarra*, 424 F. 3d 1018 (2005), a discharge order would normally cover and thereby discharge postpetition attorney's fees stemming from prepetition litigation (such as the Oregon litigation) *unless* the discharged debtor " 'returned to the fray' " after filing for bankruptcy. *Id.,* at 1027. Sherwood argued that Taggart had "returned to the fray" postpetition and therefore was liable for the postpetition attorney's fees that Sherwood sought to collect. The state trial court agreed and held Taggart liable for roughly $45,000 of Sherwood's postpetition attorney's fees.

At this point, Taggart returned to the Federal Bankruptcy Court. He argued that he had not returned to the state-court "fray" under *Ybarra*, and that the discharge order therefore barred Sherwood from collecting postpetition attorney's fees. Taggart added that the court should hold Sherwood in civil contempt because Sherwood had violated the discharge order. The Bankruptcy Court did not agree. It concluded that Taggart had returned to the fray. Finding no violation of

the discharge order, it refused to hold Sherwood in civil contempt.

Taggart appealed, and the Federal District Court held that Taggart had not returned to the fray. Hence, it concluded that Sherwood violated the discharge order by trying to collect attorney's fees. The District Court remanded the case to the Bankruptcy Court.

The Bankruptcy Court, noting the District Court's decision, then held Sherwood in civil contempt. In doing so, it applied a standard it likened to "strict liability." 522 B. R. at 632. The Bankruptcy Court held that civil contempt sanctions were appropriate because Sherwood had been " 'aware of the discharge' " order and " 'intended the actions which violate[d]' " it. *Ibid.* (quoting *In re Hardy*, 97 F. 3d at 1390). The court awarded Taggart approximately $ 105,000 in attorney's fees and costs, $ 5,000 in damages for emotional distress, and $ 2,000 in punitive damages.

Sherwood appealed. The Bankruptcy Appellate Panel vacated these sanctions, and the Ninth Circuit affirmed the panel's decision. The Ninth Circuit applied a very different standard than the Bankruptcy Court. It concluded that a "creditor's good faith belief" that the discharge order "does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's ***1801** belief is unreasonable." 888 F. 3d at 444. Because Sherwood had a "good faith belief" that the discharge order "did not apply" to Sherwood's claims, the Court of Appeals held that civil contempt sanctions were improper. *Id.,* at 445.

Taggart filed a petition for certiorari, asking us to decide whether "a creditor's good-faith belief that the discharge injunction does not apply precludes a finding of civil contempt." Pet. for Cert. I. We granted certiorari.

II

[4] The question before us concerns the legal standard for holding a creditor in civil contempt when the creditor attempts to collect a debt in violation of a bankruptcy discharge order. Two Bankruptcy Code provisions aid our efforts to find an answer. The first, section 524, says that a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" a discharged debt. 11 U.S.C. § 524(a)(2). The second, section 105, authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a).

In what circumstances do these provisions permit a court to hold a creditor in civil contempt for violating a discharge order? In our view, these provisions authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order.

A

[5] Our conclusion rests on a longstanding interpretive principle: When a statutory term is " 'obviously transplanted from another legal source,' " it " 'brings the old soil with it.' " *Hall* v. *Hall*, 584 U.S. ––––, ––––, 138 S.Ct. 1118, 1128, 200 L.Ed.2d 399 (2018) (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947)); see *Field v. Mans*, 516 U.S. 59, 69–70, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (applying that principle to the Bankruptcy Code). Here, the statutes specifying that a discharge order "operates as an injunction," § 524(a)(2), and that a court may issue any "order" or "judgment" that is "necessary or appropriate" to "carry out" other bankruptcy provisions, § 105(a), bring with them the "old soil" that has long governed how courts enforce injunctions.

[6] That "old soil" includes the "potent weapon" of civil contempt. *Longshoremen v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967). Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to "coerce the defendant into compliance" with an injunction or "compensate the complainant for losses" stemming from the defendant's noncompliance with an injunction. *United States v. Mine Workers*, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884 (1947); see D. Dobbs & C. Roberts, Law of Remedies § 2.8, p. 132 (3d ed. 2018); J. High, Law of Injunctions § 1449, p. 940 (2d ed. 1880).

[7] The bankruptcy statutes, however, do not grant courts unlimited authority to hold creditors in civil contempt. Instead, as part of the "old soil" they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction.

[8] [9] In cases outside the bankruptcy context, we have said that civil contempt "should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." ***1802** *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885) (emphasis added). This standard reflects the fact that civil contempt is a "severe remedy," *ibid.*, and that principles of "basic fairness requir[e] that those enjoined receive explicit notice" of "what conduct is outlawed" before being held in civil contempt, *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) (*per curiam*). See *Longshoremen, supra*, at 76, 88 S.Ct. 201 (noting that civil contempt usually is not appropriate unless "those who must obey" an order "will know what the court intends to require and what it means to forbid"); 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2960, pp. 430–431 (2013) (suggesting that civil contempt may be improper if a party's attempt at compliance was "reasonable").

[10] [11] [12] This standard is generally an *objective* one. We have explained before that a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable. As we said in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949), "[t]he absence of wilfulness does not relieve from civil contempt." *Id.*, at 191, 69 S.Ct. 497.

[13] [14] We have not held, however, that subjective intent is always irrelevant. Our cases suggest, for example, that civil contempt sanctions may be warranted when a party acts in bad faith. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Thus, in *McComb*, we explained that a party's "record of continuing and persistent violations" and "persistent contumacy" justified placing "the burden of any uncertainty in the decree ... on [the] shoulders" of the party who violated the court order. 336 U.S. at 192–193, 69 S.Ct. 497. On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction. Cf. *Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 801, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) ("[O]nly the least possible power adequate to the end proposed should be used in contempt cases" (quotation altered)).

[15] These traditional civil contempt principles apply straightforwardly to the bankruptcy discharge context. The typical discharge order entered by a bankruptcy court is not detailed. See *supra*, at 1799 – 1800. Congress, however, has carefully delineated which debts are exempt from discharge. See §§ 523(a)(1)–(19). Under the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope.

B

The Solicitor General, *amicus* here, agrees with the fair ground of doubt standard we adopt. Brief for United States as *Amicus Curiae* 13–15. And the respondents stated at oral argument that it would be appropriate for courts to apply that standard in this context. Tr. of Oral Arg. 43. The Ninth Circuit and petitioner Taggart, however, each believe that a different standard should apply.

[16] As for the Ninth Circuit, the parties and the Solicitor General agree that it adopted the wrong standard. So do we. The Ninth Circuit concluded that a "creditor's good faith belief" that the discharge order "does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable." 888 F. 3d at 444. But this standard is inconsistent with traditional civil contempt principles, under which parties cannot ***1803** be insulated from a finding of civil contempt based on their subjective good faith. It also relies too heavily on difficult-to-prove states of mind. And it may too often lead creditors who stand on shaky legal ground to collect discharged debts, forcing debtors back into litigation (with its accompanying costs) to protect the discharge that it was the very purpose of the bankruptcy proceeding to provide.

Taggart, meanwhile, argues for a standard like the one applied by the Bankruptcy Court. This standard would permit a finding of civil contempt if the creditor was aware of the discharge order and intended the actions that violated the order. Brief for Petitioner 19; cf. 522 B. R. at 632 (applying a similar standard). Because most creditors are aware of discharge orders and intend the actions they take to collect a debt, this standard would operate much like a strict-liability standard. It would authorize civil contempt sanctions for a violation of a discharge order regardless of the creditor's subjective beliefs about the scope of the discharge order, and regardless of whether there was a reasonable basis for concluding that the creditor's conduct did not violate the order. Taggart argues that such a standard would help the debtor obtain the "fresh start" that bankruptcy promises. He adds that a standard resembling strict liability would be fair to creditors because creditors who are unsure whether a debt has been discharged can head to federal bankruptcy court and obtain an advance determination on that question before trying to collect the debt. See Fed. Rule Bkrtcy. Proc. 4007(a).

We doubt, however, that advance determinations would provide a workable solution to a creditor's potential dilemma. A standard resembling strict liability may lead risk-averse creditors to seek an advance determination in bankruptcy court even where there is only slight doubt as to whether a debt has been discharged. And because discharge orders are written in general terms and operate against a complex statutory backdrop, there will often be at least some doubt as to the scope of such orders. Taggart's proposal thus may lead to frequent use of the advance determination procedure. Congress, however, expected that this procedure would be needed in only a small class of cases. See 11 U.S.C. § 523(c)(1) (noting only three categories of debts for which creditors must obtain advance determinations). The widespread use of this procedure also would alter who decides whether a debt has been discharged, moving litigation out of state courts, which have concurrent jurisdiction over such questions, and into federal courts. See 28 U.S.C. § 1334(b); Advisory Committee's 2010 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 8, 28 U.S.C. App., p. 776 (noting that "whether a claim was excepted from discharge" is "in most instances" not determined in bankruptcy court).

[17] Taggart's proposal would thereby risk additional federal litigation, additional costs, and additional delays. That result would interfere with "a chief purpose of the bankruptcy laws": " 'to secure a prompt and effectual' " resolution of bankruptcy cases " 'within a limited period.' " *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (quoting *Ex parte Christy*, 3 How. 292, 312, 11 L.Ed. 603 (1844)). These negative consequences, especially the costs associated with the added need to appear in federal proceedings, could work to the disadvantage of debtors as well as creditors.

[18] [19] [20] Taggart also notes that lower courts often have used a standard akin to strict liability to remedy violations of automatic stays. See Brief for Petitioner 21. An automatic stay is entered at the outset of a **\*1804** bankruptcy proceeding. The statutory provision that addresses the remedies for violations of automatic stays says that "an individual injured by any willful violation" of an automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). This language, however, differs from the more general language in section 105(a). *Supra*, at ——. The purposes of automatic stays and discharge orders also differ: A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind creditors over a much longer period. These differences in language and purpose sufficiently undermine Taggart's proposal to warrant its rejection. (We note that the automatic stay provision uses the word "willful," a word the law typically does not associate with strict liability but " 'whose construction is often dependent on the context in which it appears.' " *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (quoting *Bryan v. United States*, 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)). We need not, and do not, decide whether the word "willful" supports a standard akin to strict liability.)

III

We conclude that the Court of Appeals erred in applying a subjective standard for civil contempt. Based on the

traditional principles that govern civil contempt, the proper standard is an objective one. A court may hold a creditor in civil contempt for violating a discharge order where there is not a "fair ground of doubt" as to whether the creditor's conduct might be lawful under the discharge order. In our view, that standard strikes the "careful balance between the interests of creditors and debtors"

that the Bankruptcy Code often seeks to achieve. *Clark v. Rameker*, 573 U.S. 122, 129, 134 S.Ct. 2242, 189 L.Ed.2d 157 (2014).

Because the Court of Appeals did not apply the proper standard, we vacate the judgment below and remand the case for further proceedings consistent with this opinion.

It is so ordered.

**All Citations**

139 S.Ct. 1795, 67 Bankr.Ct.Dec. 69, 19 Cal. Daily Op. Serv. 5034

---

Footnotes

\*      The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

---

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.